# United States District Court
# District of Massachusetts

TITUS MACHARIA, as legal
      guardian of DAVID MACHARIA,
LEONORA MACHARIA, and
D.S.M.,
          Plaintiffs,


          v.                     CIVIL ACTION NO. 2009-10391-RBC[1]


CITY OF REVERE,
TERENCE REARDON,
JOHN NELSON,
ROBERT IMPEMBA,
DARYLE LAMONICA,
LOUIS LAROSA,
PATRICK DUSSEAULT,
JOHN GOODWIN,
CAMBRIDGE HEALTH ALLIANCE,
PHYLLIS CHEN,
JANE LYNN MURPHY,
AMN HEALTHCARE, INC., and
JOHN DOE,
          Defendants.

---

[1]
      On October 28, 2009, with the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

# *MEMORANDUM AND ORDER*
# *ON MOTION OF DEFENDANT,*
# *PHYLLIS CHEN, M.D., FOR*
# *SUMMARY JUDGMENT AND ENTRY OF*
# *SEPARATE AND FINAL JUDGMENT (#146)*

COLLINGS, U.S.M.J.

## *I. Introduction*

On December 26, 2012, defendant Phyllis Chen, M.D. ("Dr. Chen")  filed

a motion for summary judgment (#146) which included a memorandum of law

and exhibits, but no concise statement of material facts.[2]  In due course on

January 10, 2013, the plaintiffs filed their opposition to the dispositive motion

(#160) and their response to Dr. Chen's statement of undisputed facts[3] (#161).

On January 23, 2013, Dr. Chen filed a reply brief (#172) and, six days later, the

---

[2]

     The language of Local Rule 56.1 is precatory, to wit, "[m]otions for summary judgment *shall* include a concise statement of the material facts." (Emphasis added)  The failure to "include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation" can have consequences under the rule: "Failure to include such a statement constitutes grounds for denial of the motion." L.R. 56.1.

[3]

     The plaintiffs drop a footnote to the title of their response, acknowledging that the "[d]efendant's Motion for Summary Judgment does not include a 'Statement of Undisputed Facts.'" (#161 n.1) Nevertheless, the plaintiffs further explain that "to the extent that [Dr. Chen's] memorandum does include factual allegations, the Plaintiffs offer the following Response to the allegations in dispute." (#161 n.1)

plaintiffs filed a response to the defendant's reply (#183). The Court heard oral argument on the summary judgment motion on February 27, 2013, and at this juncture the motion stands poised for resolution.

## II. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1 Cir., 2005) (internal quotations marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1 Cir., 2003)(citations omitted); *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1,

---

[4]

Rule 56 was amended effective December 1, 2010. The summary judgment standard is now set forth in Rule 56(a), but "[the standard for granting summary judgment remains unchanged." *Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 n.4 (1 Cir., 2011).

5 (1 Cir., 2010).

> Once the moving party alleges the absence of all meaningful factual disputes, the non-moving party must show that a genuine issue of material fact exists. This showing requires more than the frenzied brandishing of a cardboard sword. The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.

*Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 65 (1 Cir., 2012) (internal citations and quotation marks omitted); *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1 Cir., 2006).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1 Cir., 2006); *Guay v. Burack*, 677 F.3d 10, 13 (1 Cir., 2012). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting

4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986))(further internal quotation marks omitted).

### III.  Discussion

Dr. Chen argues that she is entitled to the entry of judgment as a matter of law in her favor because, at all relevant times, she was a public employee working for a public employer[5] such that she is immune from liability pursuant to the Massachusetts Tort Claims Act, Mass. Gen. L. c. 258 § 2[6].  The plaintiffs, on the other hand, contend that Dr. Chen was not a public employee and, therefore, does not benefit from the immunity provision in the statute.  And so the issue is drawn:  At the time of the events in question, to wit, February 2007, was Dr. Chen a public employee within the meaning of the Massachusetts Tort Claims Act?

Dr. Chen has established that, at the time in question, she "was employed as an attending Emergency Room physician at the Whidden Hospital campus

---

[5]

On September 20, 2011, the Court concluded that the Cambridge Health Alliance ("CHA") was a public employer within the meaning of the Massachusetts Torts Claims Act, Mass. Gen. L. c. 258 §§ 1, 4. *See* #108 at 10.  While Dr. Chen was employed by the Cambridge Health Alliance Physicians Organization ("CHAPO"), the plaintiffs do not dispute that CHAPO is a public employer. *See* #160 at 4 ("That CHAPO is a public employer does not mean that all of its employees are 'public employees.'"); *see also* #146, Exh. 5-7.

[6]

"Section 2 of chapter 258 extends immunity from personal liability to public employees who are acting within the scope of their duties." *McNamara v. Honeyman*, 406 Mass. 43, 46, 546 N.E.2d 139, 141 (1989).

by the Cambridge Health Alliance Physicians Organization ("CHAPO"), a public employer." (#146, Exh. 3, Affidavit of Phyllis Chen, M.D. ¶ 1; #146, Exh. 4) According to the averments in her affidavit, Dr. Chen does not treat private patients through her employment with CHAPO and she does not determine which patients she will treat. (#146, Exh. 3 ¶ 4) According to the terms of her employment contract with CHAPO, Dr. Chen "worked under the direction and control of" CHAPO and the Chief of Emergency for Cambridge Health Alliance. (#146, Exh. 3 ¶ 5; #146, Exh. 4) Dr. Chen did not bill her patients directly nor did she receive remuneration directly from them; CHAPO regulated the fees charged for her services and received the payments on billings for Dr. Chen's services at Whidden Hospital. (#146, Exh. 3 ¶ 7) As part of her employment, Dr. Chen was required: 1) "to abide by all applicable bylaws, policies, rules and regulations implemented by [her] employer and its affiliated facilities"; 2) "to participate in a health benefit program approved and designated by [her] employer"; 3) to participate in teaching opportunities as defined and regulated by CHAPO and by the Chief of Emergency Medicine." (#146, Exh. 3 ¶¶ 8-10; #146, Exh. 4) These factors surely are to be considered in determining whether Dr. Chen was a public employee.

All of these aspects of Dr. Chen's employment are quite similar to those

of the doctor in the case of *Litchfield v. Bayley*, 2004 WL 2075567, *1 (Mass.

Super. Sept. 9, 2004).  Judge Agnes' reasoning in the *Litchfield* case is equally

applicable here:

> In short, in one sense the defendant certainly has demonstrated that he was a public employee, i.e., a person whose salary was paid for by a public employer, a person who performed duties for a public employer, and a person who in some respects was under the control of a public employer. However, these are not the only material facts because the decisional law of this Commonwealth makes it clear that public employment in a generic sense is not determinative of the question whether a physician was a 'public employee' employed by a 'public employer' and thus immune from individual liability within the meaning of the Massachusetts Tort Claims Act, G. L. c. 258, § 2. See *McNamara v. Honeyman*, 406 Mass. 43, 49 (1989). 'In the specific case of a physician, we examine whether a public employer directs and controls the physician's treatment of the patient.' *Williams v. Hartman*, 413 Mass. 398, 400 (1992).

*Litchfield v. Bayley,*  2004 WL 2075567, *1 .

"Whether an individual is a public employee is a question of fact."

*Williams v. Hartman*, 413 Mass. 398, 400, 597 N.E.2d 1024, 1026 (1992)

(citing *Rowe v. Arlington*, 28 Mass. App. Ct. 389, 391, 551 N.E.2d 552 (1990)).

The Massachusetts Supreme Judicial Court ("SJC") has explained the analysis

to be undertaken when determining whether an individual is a public employee

under Mass. Gen. L. c. 258:

> The legal principles that govern the determination whether the doctor was a 'public employee' of the city and, therefore, freed from liability to the plaintiff by G. L. c. 258, § 2, are the same as those that have determined whether an agent is a servant for whose negligent acts a principal may be liable under the common law doctrine of respondeat superior. Although the Tort Claims Act's definition of the words 'public employee' in § 1 provides no detailed guidance in deciding whether a person is a 'public employee,' the definition of 'public employer' in § 1 does, as the parties appropriately note. That definition states that a city or any agency of a city is a public employer if it 'exercises direction and control over the public employee.' G. L. c. 258, § 1 (1984 ed). The right to control an agent's activities has been the guiding principle in deciding cases involving an assertion of vicarious liability against the agent's principal.

*Kelley v. Rossi*, 395 Mass. 659, 661, 481 N.E.2d 1340, 1342 (Mass., 1985); *Smith v. Steinberg*, 395 Mass. 666, 667, 481 N.E.2d 1344, 146 (Mass., 1985) ("The basic question is whether a person is subject to the direction and control of a public employer.").

Massachusetts courts have recognized:

> It is true...that the very nature of a physician's function tends to suggest that in most instances he will act as an independent contractor. Another person, unless a physician himself, would have no right (or desire) to exercise control over the details of the physician's treatment of a patient; the profession is distinct and requires a high level of skill and training; and the physician must use independent judgment.

8

*Kelley,* 395 Mass. at 662, 481 N.E.2d at 1342-43; *Williams,* 413 Mass. at 400, 597 N.E.2d at 1026 ("In the specific case of a physician, we examine whether a public employer directs and controls the physician's treatment of the patient. A physician is not necessarily a public employee simply because a public entity pays his or her salary, provides a retirement fund, or manages a vacation schedule." )(citations omitted).

With that having been said, however, the SJC has also observed that Massachusetts "cases have not adopted the position that a physician is always an independent contractor." *Kelley*, 395 Mass. at 662, 481 N.E.2d at 1342.

Several of the factors that courts have found significant as "tending to show that the doctor was a servant of the hospital" are not present in this case. *Kelley,* 395 Mass. at 665, 481 N.E.2d at 1344.  For example, unlike the doctor in the *Kelley* case, Dr. Chen was not a resident[7] at Whidden Hospital; she was an attending Emergency Room physician.[8]  Further, like the doctor in *Smith v. Steinberg*, Dr. Chen's compensation was not merely a set salary, but included a

---

[7]
"As a general rule, resident physicians employed by a public hospital are public employees because the nature of their appointment is that they make treatment decisions under the direction and control of their public employer. *See Williams*, 413 Mass. at 401 n. 4, discussing *Kelly v. Rossi*, 395 Mass. 659, 663 (1985) ('[A] physician serving in a residency program is usually subject to the employer's direction and control in the treatment of patients')." *Johnson v. Cooke*, 2004 WL 856606, *3 (Mass. Super. Mar. 1, 2004) (further citations omitted).

[8]
This fact alone distinguishes several of the cases upon which the defendant relies.  *See*, e.g., *Williams v. Bresnahan*, 27 Mass. App. Ct. 191, 191, 536 N.E.2d 365, 366 ("The defendants are house officers (residents) at Boston City Hospital."), *rev. denied*, 405 Mass. 1202, 541 N.E.2d 344 (1989) (Table); *Johnson v. Cooke*, 2004 WL 856606, *1 (Mass. Super. Mar. 1, 2004) ("Dr. Joshi was the anesthesia resident involved in Mr. Johnson's treatment during the surgery when the alleged negligence occurred.").

component based, at least in part, on her productivity. *See* #146, Exh. 4, FY05

Exhibit B; *Smith*, 395 Mass. at 669, 481 N.E.2d at 1347 (In finding that genuine

issues of material fact precluded the entry of summary judgment for the

defendant doctor on the issue of "public employee," the court considered, *inter

alia*, that the doctor's "compensation from the group practice plan was

dependent from year to year in part on his productivity.").

Most significantly, while the terms of her employment agreement reflect,

in general, that Dr. Chen worked under the ultimate direction and control of

CHAPO and the Chief of Emergency for Cambridge Health Alliance, there is no

evidence to suggest that at the time of the alleged negligence Dr. Chen worked

under the immediate supervision of another physician such that, for instance,

she needed the permission of a supervisor to admit or discharge a patient.  A

dearth of evidence has been proffered to indicate that Dr. Chen did not exercise

her own discretion and independent medical judgment in how she chose to

treat Mr. Macharia without input or direction from CHAPO or the Chief of

Emergency for Cambridge Health Alliance, i.e., the public employer.  Indeed,

Dr. Chen testified to the contrary at her deposition as follows:

> Q. Now, as a physician in 2007, Cambridge Health
> Alliance didn't control or dictate what treatments,

examination or diagnoses you performed on any of your patients, right?

A. No.

Q. And they did not dictate and control what diagnoses or examinations or treatments you performed on David Macharia in 2007, right?

A. Right.

Q. The decision regarding what an appropriate examination or diagnosis of treatment was yours and yours alone, correct?

A. Yes.

Q. That's because you rely on your training and your experience as a medical professional?

A. Yes.

*****

Q. And no one from Cambridge Health Alliance ever dictated which evaluation, diagnosis or treatment to render any given patient, right?

A. Correct.

Q. Including David Macharia?

A. Correct.

Plaintiffs' Response #161 ¶¶ 20-21, Exh. 15.

Here, apart from the terms of the contract, no evidence has been submitted to

show that either Dr. Chen's supervisor or anyone else at the hospital "controlled

or directed the defendant's day-to-day activities...the defendant alone made the medical decisions in connection with the treatment of h[er] patients." *Williams,* 413 Mass. at 401, 597 N.E.2d at 1026.  Dr. Chen's deposition testimony raises genuine issues of material fact as to whether the public employer directed and controlled her treatment of Mr. Macharia in February of 2007.

Further, as the plaintiffs note, after weighing essentially the same factors and arguments as advanced in the case at hand, the state court found "that there are genuine issues of material fact, which prevent entry of summary judgment, as to whether Dr. Chen was subject to the direction and control of" CHAPO. *See Linger v. Chen*, Memorandum of Decision and Order on Civil action No. ESCV2010-00365, #183, Exh. 1.

In short, "[t]he record simply is not adequate to resolve the issue [of whether Dr. Chen was subject to the direction and control of CHAPO] conclusively." *Hopper v. Callahan*, 408 Mass. 621, 634, 562 N.E.2d 822, 830 (1990).  Genuine issues of material fact exist for the jury to decide.

## IV. Conclusion

For all of the reasons stated, it is ORDERED that the Motion Of Defendant, Phyllis Chen, M.D., For Summary Judgment And Entry Of Separate And Final

1of 13

Judgment (#146) be, and the same hereby is, DENIED.

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

March 7, 2013.